[Cite as *State v. Lipsinic*, 2017-Ohio-8187.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27508 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-2804 |
| | : | |
| DREW S. LIPSINIC | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 13th day of October, 2017.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

DANIEL F. GETTY, Atty. Reg. No. 0074341, 46 East Franklin Street, Centerville, Ohio 45459
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

**{¶ 1}** Defendant-appellant, Drew S. Lipsinic, appeals from his convictions on two counts of possession of a controlled substance, both of which were fifth-degree felonies pursuant to R.C. 2925.11(A), (C)(1) and (C)(6).  Lipsinic, who pleaded no contest to the two offenses, argues that his convictions should be reversed because the trial court erred by overruling his motion to suppress evidence obtained as the result of an unlawful seizure and search of his person.  We find that the trial court did not err because the seizure and the search were permissible under the Fourth Amendment.  Therefore, we affirm the trial court's decision overruling Lipsinic's motion to suppress.

### I. Facts and Procedural History

**{¶ 2}** On September 7, 2016, at or around 7:40 p.m., a Dayton Police Department officer assigned to the Community Problem Response Team discovered a stolen car while on patrol in a marked cruiser in the high crime area of Blackwood Avenue, Briarwood Avenue and Radio Road.  Tr. of Hr'g on Mot. to Suppress 5-6 and 10, Dec. 22, 2016.  As the officer drove past another car, his cruiser's automatic license plate reader sounded an alarm indicating that the car was the subject of a stolen vehicle report, which the officer confirmed manually by checking the car's registration number through the Law Enforcement Automated Data System.  *Id.* at 7-8.  He saw three people in the car: a woman in the driver's seat, a man in the front passenger's seat, and a second man—Lipsinic—in the rear seat.  *See id.* at 9-10.

**{¶ 3}** Once he passed the car, the officer lost sight of it, but given his knowledge of the area, he proceeded to a nearby "drug house" in an apartment building on Radio Road, where, three weeks earlier, a man had been "shot in the buttocks and left for dead"

as the result of "a drug deal gone bad." *Id.* at 6 and 8. The officer found the car, which had been out of his sight for less than five minutes, parked behind the building. *Id.* at 8-9.

{¶ 4} Parking his cruiser in front of the car, the officer saw the woman seated in the driver's seat shift herself into the front passenger's seat. *Id.* at 9. He found Lipsinic still occupying the rear seat, though the other man was nowhere to be seen; the officer "believe[d] that he was probably in the drug house" at the time. *Id.* at 10. After moving the woman to the rear seat of his cruiser, the officer approached Lipsinic and had him step out of the car.[1] *Id.* at 11. The officer performed a pat-down search and discovered a knife in a pocket in Lipsinic's pants. *Id.* When the officer removed the knife from the pocket, a "[g]el cap" of heroin fell onto the ground. *Id.* at 13. He then placed Lipsinic under arrest. *Id.* at 17.

{¶ 5} On October 5, 2016, a Montgomery County grand jury indicted Lipsinic on charges of possession of less than one gram of heroin, a fifth degree felony under R.C. 2925.11(A) and (C)(6); and one count of aggravated possession of less than the bulk amount of fentanyl, likewise a fifth degree felony under R.C. 2925.11(A) and (C)(1).[2] Lipsinic, who stood silent at his arraignment, filed a motion on December 21, 2016, seeking the suppression of all evidence obtained as the result of the search of his person. The trial court overruled Lipsinic's motion in its decision of January 13, 2017, and Lipsinic

---

[1] The officer did not indicate whether he performed a pat-down search of the woman before he secured her in the back seat of his cruiser, perhaps because neither the State nor Lipsinic's counsel inquired. *See* Tr. of Hr'g of Mot. to Suppress 9-11 and 16-20.

[2] The indictment does not specify the quantity of fentanyl, but it states that the charge for aggravated possession is a fifth degree felony. *See* R.C. 2925.11(C)(1)(a)-(b).

thereafter entered pleas of no contest to the two charges. He timely filed his notice of appeal to this court on March 22, 2017.

## II. Analysis

{¶ 6} The sole assignment of error presented for our review is the following:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING DEFENDANT'S MOTION TO SUPPRESS[.]

{¶ 7} Lipsinic argues that his detention and the search of his person were unjustified because "[t]he mere fact that [he] was a passenger in a[n] alleged[ly] stolen vehicle, which was parked in a high crime area, d[id] not [give rise to a] reasonable[,] articulable suspicion" that he was engaged or about to be engaged in criminal activity. Appellant's Br. 6-7. In support of his argument, he relies largely on the decision of the U.S. Court of Appeals for the Ninth Circuit in *Rohde v. City of Roseburg*, 137 F.3d 1142 (9th Cir.1998).

{¶ 8} Appellate "review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. As the trier of fact, a trial court "is in the best position to weigh * * * evidence * * * and evaluate [the credibility of] witness[es]," so an "appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Graves*, 12th Dist. Clermont No. CA2015-03-022, 2015-Ohio-3936, ¶ 9, citing *State v. Cruz*, 12th Dist. Preble No. CA2013-10-008, 2014-Ohio-4280, ¶ 12. Accepting the trial court's findings of fact as true, "the appellate court must then independently determine, without deference to the [trial court's legal] conclusion[s]," whether the "facts satisfy the applicable * * * standard."

*Burnside*, 2003-Ohio-5372, ¶ 8, citing *Fanning*, 1 Ohio St.3d 19, and *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (3d Dist.1997).

{¶ 9} The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 8, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *see also State v. Taylor*, 138 Ohio App.3d 139, 145, 740 N.E.2d 704 (2d Dist.2000) (noting "the Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article 1" of the Ohio Constitution "protect the same interests in a consistent manner"). Warrantless searches and seizures violate this prohibition unless conducted pursuant to one of the "few specifically established and well-delineated exceptions." (Citations omitted.) *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One of these exceptions "is commonly known as an investigative or *Terry* stop." *State v. Dorsey*, 10th Dist. Franklin No. 04AP-737, 2005-Ohio-2334, ¶ 17, citing *Terry*, 392 U.S. 1.

{¶ 10} Though not necessarily requiring a warrant, the temporary "detention of [persons] during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning" of the Fourth Amendment. (Citations omitted.) *Whren v. United States*, 517 U.S. 806, 809-810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). An "automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Id.* at 810. Generally, a police officer's decision to stop an automobile will comport with this requirement if the officer has a "reasonable suspicion" of criminal activity. *United States v. Lopez-Soto*, 205 F.3d 1101, 1104-1105 (9th Cir.2000); *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23.

{¶ 11} We hold that the officer had sufficient justification to detain Lipsinic. Standing alone, the fact that the car in which Lipsinic was a passenger had been reported stolen provided a more than sufficient basis for the Dayton Police officer to make an investigatory stop. *State v. Strozier*, 172 Ohio App.3d 780, 2007-Ohio-4575, 876 N.E.2d 1304, ¶ 14 (2d Dist.) (finding that a stolen vehicle report constitutes "probable cause" for a police officer to make an investigatory stop of a vehicle). Furthermore, "[w]hen a lawfully stopped vehicle contains passengers, the Fourth Amendment permits law enforcement officers to detain [the] passengers" as well as the driver. *See State v. Brown*, 2d Dist. Montgomery No. 20336, 2004-Ohio-4058, ¶ 14; *State v. Wilcox*, 2d Dist. Clark No. 2011 CA 99, 2012-Ohio-3400, ¶ 15-16. Additionally, in the interest of the officers' safety, they may order "the driver and the passengers [alike] to exit the vehicle." *Brown*, 2004-Ohio-4058, ¶ 14, citing *Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).

{¶ 12} We hold also that the pat-down search of Lipsinic's person was permissible. A "frisk for weapons is [not necessarily] warranted" whenever "an investigatory stop and detention of a suspect is justified." (Citations omitted.) *State v. Carter*, 2d Dist. Montgomery No. 21145, 2006-Ohio-2823, ¶ 16. Instead, an officer must have "reasonable grounds to believe that [a] suspect is armed and dangerous" before conducting a pat-down search for weapons, though the "officer need not be absolutely certain that the [suspect] is armed." (Citations omitted.) *Id.* The "issue is whether a reasonably prudent person in [the same or similar] circumstances would be warranted in the belief that [the officer's] safety or the safety of others was in danger." (Citation omitted.) *Id.* Nevertheless, the "right to frisk is virtually automatic when [persons] are

suspected of committing a crime, like drug trafficking, for which they are likely to be armed." *State v. Evans*, 67 Ohio St.3d 405, 413, 618 N.E.2d 162 (1993), citing *State v. Williams*, 51 Ohio St.3d 58, 554 N.E.2d 108 (1990), and *United States v. Ceballos*, 719 F.Supp. 119, 126 (E.D.N.Y.1989); *see also State v. Martin*, 2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 17.

{¶ 13} Here, the trial court observed that the Dayton Police officer discovered Lipsinic seated as a passenger "in a stolen car, outside of a suspected drug house" in an "area renowned for [traffic] in drugs and shootings." Decision, Order & Entry Denying Def.'s Mot. to Suppress Evidence 2, Jan. 13, 2017. The other occupant of the car had exhibited "furtive behavior by quickly jumping from the driver's seat to the front passenger['s] seat," and the man originally seated in the front passenger's seat "was no longer present." *Id.* at 2-3. Under these circumstances, we concur with the trial court's holding that the officer had "a reasonable and articulable basis for conducting an officer safety pat down of [Lipsinic] for weapons." *Id.* at 3.

{¶ 14} As well, during the hearing on Lipsinic's motion to suppress, the Dayton Police officer testified that he performed the pat-down search because he planned "to detain [Lipsinic] in [his] cruiser" for "officer safety" pending the completion of his investigation. Tr. of Hr'g on Mot. to Suppress 17-18. In such circumstances, a police officer is "authorized to perform a weapons pat-down" before "plac[ing] [a suspect] in [a] police cruiser." *Carter*, 2006-Ohio-2823, ¶ 17, citing *State v. McCaulley*, 161 Ohio App.3d 568, 2005-Ohio-2864, 831 N.E.2d 474 (2d Dist.). We find that the officer had legitimate reasons, other than mere convenience, for deciding to sequester Lipsinic in the cruiser until the investigation could be completed, meaning that the officer's pat-down

search of Lipsinic's person for weapons was permissible. *See*, *e.g.*, *State v. Lozada*, 92 Ohio St.3d 74, 77-79, 748 N.E.2d 520 (2001); *State v. Bean*, 12th Dist. Butler No. CA2015-07-136, 2016-Ohio-876, ¶ 14-16.

{¶ 15} Finally, with respect to the *Rohde* decision, we find that Lipsinic's reliance is misplaced. The case began with an action pursuant to 42 U.S.C. 1983 brought by a husband and wife who were immediately arrested when a police officer stopped their car in response to a report of a stolen vehicle. *Rohde v. City of Roseburg*, 137 F.3d 1142, 1143 (9th Cir.1998). Only after the officer formally placed Mr. and Mrs. Rohde under arrest did he undertake an investigation. *See id.* at 1143-1144.

{¶ 16} In its opinion, the Ninth Circuit found that the immediate arrest of the driver, Mr. Rohde, was proper because "a person [who] operates an automobile * * * is effectively in possession of the vehicle and can reasonably be presumed [to be] aware of its [true] ownership," but it determined that the immediate arrest of Mrs. Rohde was improper because a passenger in a vehicle "cannot be presumed to be aware of its unexcused absence [i.e. theft] from its owner's possession." *Id.* at 1144. By contrast, the Dayton Police officer in the instant case did not immediately place Lipsinic under arrest; instead, he began an investigation that was not impermissibly intrusive under the Fourth Amendment. *Rohde*, regardless, is not controlling, and for all of the foregoing reasons, Lipsinic's assignment of error is overruled.

## III. Conclusion

{¶ 17} We find that the seizure and search of Lipsinic's person were permissible under the Fourth Amendment. Therefore, we affirm the trial court's January 13, 2017 decision overruling Lipsinic's motion to suppress.

. . . . . . . . . . . . .


HALL, P.J. and DONOVAN, J., concur.


Copies mailed to:

Mathias H. Heck, Jr.
Michael J. Scarpelli
Daniel F. Getty
Hon. Mary Lynn Wiseman