OPINION
{¶ 1} Defendant-Appellant Terrence Molette appeals his conviction for possession of crack cocaine in an amount greater than one gram, but less than five grams. In his sole assignment of error, Molette argues that the trial court erred in overruling his motion to suppress. For the following reasons we agree with the trial court's decision to overrule Molette's motion to suppress, and we affirm his conviction.
 {¶ 2} Very early in the morning on September 9, 2002 Dayton Police Officers Saylors and Huey were on bike patrol in a high crime neighborhood. Shortly before 1:00 a.m. they were dispatched to the corner of Linda Vista and Victor Avenues on a report of prowlers. The dispatcher described the prowlers as two black males, one wearing a red shirt, and one wearing a black and white shirt. Minutes later as the officers neared the scene, they saw three men on a porch, two of whom met the description of the prowlers. Those two men were arguing loudly, pointing their fingers at each other. When the men saw the officers, they jumped from the porch and ran down the side of the house, toward the back yard. The third man pointed at the other two and yelled, "Go get `em. Go get `em."
 {¶ 3} Officer Saylors pursued the two men and about twenty seconds later, encountered Molette. Although Molette was no longer wearing a shirt, Officer Saylors recognized him as one of the two men who had jumped from the porch and run. Officer Saylors ordered Molette to the ground and handcuffed him for officer safety. At that time Officer Sharp arrived in a cruiser. Before Molette was put into the cruiser to be returned to the scene for possible identification as one of the reported prowlers, Officer Saylors patted him down for weapons. Officer Saylors felt a plastic bag containing a hard, lumpy substance, which he immediately recognized to be contraband. Officer Saylors removed the suspected contraband, which field tested positive for cocaine.
 {¶ 4} Molette was arrested for possession of crack cocaine. After returning to the scene, he was also arrested for menacing based on the other man's report to officers that Molette had threatened him with a handgun. A black and white shirt was recovered in the front yard of a neighboring house, and Molette admitted that it was his.
 {¶ 5} Molette was indicted on one count of possession of crack cocaine. He filed a motion to suppress, which the trial court overruled. Molette pled no contest, and the trial court sentenced him to a six-month term at CRC. He subsequently filed a timely notice of appeal.
 {¶ 6} Molette's sole assignment of error:
 {¶ 7} "The trial court erred by overruling Mr. Molette's motion to suppress evidence discovered by the illegal seizure and search of his person."
 {¶ 8} Molette presents two arguments in support of his sole assignment of error. First, he argues that the officers lacked reasonable, articulable suspicion of criminal activity to justify his seizure. Second, he claims that there was no particular indication that he was armed or dangerous, and therefore, no pat down was warranted. We disagree in both regards.
 {¶ 9} In a motion to suppress the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of witnesses. State v. Retherford
(1994), 93 Ohio App.3d 586, 592, 639 N.E.2d 498, discretionary appeal overruled, 69 Ohio St.3d 1488, 635 N.E.2d 43. Therefore, in reviewing a decision on a motion to suppress, an appellate court must give broad deference to the trial court's findings of fact if they are supported by competent, credible evidence. Id. However, an appellate court conducts a de novo review of whether the facts meet the appropriate legal standard.Ornelas v. United States (1996), 517 U.S. 690, 116 S.Ct. 1657;Retherford, supra.
 {¶ 10} Warrantless searches and seizures "are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." Katz v. United States
(1967), 389 U.S. 347, 357, 88 S.Ct. 507. One such exception was established in Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, wherein the United States Supreme Court held that under some circumstances police officers may approach an individual in order to investigate possible criminal behavior even though there is not probable cause to arrest. In justifying a Terry stop, the officer "must be able to point to specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant that intrusion." Id. at 21.
 {¶ 11} When judging the reasonableness of the officer's actions, courts must focus on the totality of the circumstances from an objective standpoint. State v. Andrews (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271, certiorari denied, 501 U.S. 1220, 111 S.Ct. 2833; State v. Bobo (1988),37 Ohio St.3d 177, 179-80, 524 N.E.2d 489. Furthermore, "these circumstances are to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." Andrews, supra, at 87-88.
 {¶ 12} Officer Saylors had reasonable, articulable suspicion to justify making an investigative detention of Molette. The officers were dispatched on a report of prowlers, and they were given descriptions of the prowlers. When the officers arrived on the scene, they saw Molette and another man arguing loudly; the two met the descriptions they had received. Moreover, when Molette and the other man saw the officers, they immediately jumped from the porch and ran, which strongly suggested involvement in criminal activity. See, e.g., Illinois v. Wardlow (2000),528 U.S. 119, 120 S.Ct. 673. Even though Molette was soon found without a shirt, Officer Saylors recognized him as one of the men who had run from the officers. These factors, viewed from the perspective of a reasonable officer, amounted to reasonable suspicion to warrant an investigative stop of Molette.
 {¶ 13} Furthermore, when an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range may be armed, the officer may conduct a limited protective search for concealed weapons. Terry, supra. In order to conduct a pat down, the officer "need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."State v. Smith (1978), 56 Ohio St.2d 405, 407, 384 N.E.2d 280, citingTerry, supra.
 {¶ 14} When Officer Saylors patted Molette down, he was suspected of voyeurism. Therefore, the officers had a duty to investigate the circumstances in order to determine whether Molette should be arrested. To that end, Officer Saylors intended to take Molette back to the scene for a possible show-up identification and to take a statement from the victim. Certainly, Officer Saylors could not have been expected to walk both his bike and Molette back to the scene. Accordingly, he decided to put Molette in to Officer Sharp's cruiser. Officer Saylors described the neighborhood as a violent one, rife with crime. In fact, there had been a shooting just a week earlier. Therefore, before putting Molette into the cruiser, Officer Saylors patted him down out of reasonable concern for his safety and that of Officer Sharp. "The state's obligation not to violate the individual's Fourth Amendment rights does not command that the police officer forsake reasonable precautionary measures during the performance of his duties." State v. Evans (1983), 57 Ohio St.3d 405,410, 618 N.E.2d 162. Under all of the circumstances, Officer Saylors was justified in being concerned for his safety and that of Officer Sharp, thus warranting a pat down of Molette for weapons.
 {¶ 15} Finally, if during the course of a pat down for weapons, an officer feels what he immediately recognizes to be contraband, the officer may seize it. Minnesota v. Dickerson (1993), 508 U.S. 366,113 S.Ct. 2130. Molette does not claim that Officer Saylors was incapable of immediately recognizing the bag of crack as contraband. Thus, Officer Saylors was permitted to remove it from Molette's pocket.
 {¶ 16} For the forgoing reasons, both the investigative detention and the pat down were justified under the particular circumstances of this case. Accordingly, Molette's sole assignment of error is overruled.
 {¶ 17} The judgment of the trial court is Affirmed.
Fain, P.J. and Glasser, J., concur.